CLARK WARDLE LLP
Joshua J. Leonard, ISB No. 7238
251 E. Front Street, Suite 310
P.O. Box 639
Boise, Idaho 83701
Telephone: (208) 388-1000
jleonard@clarkwardle.com
filing@clarkwardle.com

*Attorneys for Plaintiffs PI Tower Development LLC, and*
*Cellco Partnership d/b/a Verizon Wireless*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PI TOWER DEVELOPMENT LLC, and CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, <br><br> Plaintiffs, <br><br> v. <br><br> BONNER COUNTY, IDAHO; BOARD OF BONNER COUNTY COMMISSIONERS; and BRIAN DOMKE, ASIA WILLIAMS, and RON KORN, each in his/her official capacity as a Commissioner on the Board of Bonner County Commissioners, <br><br> Defendants. | Case No.: 2:26-cv-262 <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EXPEDITED TREATMENT |

Pursuant to Fed. R. Civ. P. 15(a)(1)(A) and (c), for their Complaint against defendants

Bonner County, Idaho ("County"); Board of Bonner County Commissioners ("Board"); and

Bonner County Commissioner Brian Domke, Bonner County Commissioner Asia Williams, and

Bonner County Commissioner Ron Korn, each in their official capacity as a Commissioner on

the Board of Bonner County Commissioners (collectively "Commissioners") (together, the

County, the Board, and the Commissioners are referred to herein as "Defendants"), Plaintiffs PI Tower Development LLC ("PI Tower") and Cellco Partnership d/b/a Verizon Wireless ("Verizon") (collectively "Plaintiffs"), by and through their undersigned counsel, upon knowledge as to their own actions and dealings and upon information and belief as to Defendants and their actions, allege as follows:

**Nature of the Action**

1.    This action arises from Defendants' unlawful denial of PI Tower's Conditional Use Permit ("CUP") application to construct a wireless communications facility, called a "communication tower" in the County Code of Bonner County, Idaho ("Bonner County Code"), in the form of a 140-foot communication tower (the "Proposed Facility") on the real property identified by the Bonner County Assessor as Parcel No. RP59N01W09510A in Bonner County, Idaho (the "Subject Property").

2.    The Proposed Facility seeks to: (a) remedy a significant (4-7 mile) gap in Verizon's personal wireless services along State Highway 95, near Elmira, Idaho, where average daily traffic is approximately 7,600 cars per day; (b) provide personal wireless service to residents in and around Elmira, Idaho; and (c) offload neighboring sites' coverage to increase throughput for users of Verizon's personal wireless service.

3.    Currently, there are no existing communication towers within a two-mile radius of the Subject Property. In fact, the nearest existing communication tower is approximately 3.6 miles away from the Subject Property.

4.    To close the significant gap along State Highway 95, a communication tower must have line-of-sight to the roadway. As a result, potential locations for the Proposed Facility are extremely limited.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 2

5.      The Subject Property is privately owned, and it is located in a very rural area, with relatively little residential (or other) development, making the Proposed Facility compatible with its surrounding uses. The Subject Property already has significant utility facilities on it, in that at least two tall runs of electric power lines cross the Subject Property.

6.      Harmoni Towers (as primary applicant, on behalf of its wholly-owned subsidiary PI Tower) submitted its CUP application to the County to obtain approval to construct and operate the Proposed Facility on the Subject Property. In its CUP application, PI Tower provided detailed evidence supporting the Proposed Facility's compliance with Bonner County Code, including all setbacks and safety measures. PI Tower also submitted coverage maps, drive test results, and other evidence demonstrating the existence of Verizon's significant gap in personal wireless coverage near the Subject Property and along State Highway 95 that no other location could resolve.

7.      The County's denial effectively prohibits Verizon's provision of personal wireless services in the vicinity of the Subject Property and is not supported by substantial evidence in a written record, both of which violate the federal Communications Act, as amended, 47 U.S.C. § 332(c)(7)(B) ("Communications Act" or "Act"). Plaintiffs, therefore, seek a declaratory judgment and order from this Court directing Defendants to approve the CUP application submitted by Harmoni Towers for PI Tower, in accordance with Plaintiffs' rights under the Communications Act.

8.      Plaintiffs also request expedited treatment of this Complaint, pursuant to 47 U.S.C. § 332(c)(7)(b)(v).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 3

**Parties**

9.      Plaintiff PI Tower is a Delaware limited liability company, with its principal place of business in Charlotte, North Carolina, and is duly registered to do business in the State of Idaho. PI Tower builds, owns, operates, and manages tower assets and wireless infrastructure used by national and regional wireless carriers to provide wireless voice, wireless data, and wireless broadband internet services to end-user consumers in Idaho and throughout the United States of America.

10.      Plaintiff Verizon is a general partnership organized under the laws of Delaware. Verizon is qualified to do business in the State of Idaho, with a primary corporate address of One Verizon Way, Basking Ridge, New Jersey 07920.  Verizon provides personal wireless services using radio frequencies licensed by the Federal Communications Commission ("FCC").

11.      Defendant the County is a county located in north Idaho, and is a "State or local government or instrumentality thereof," within the meaning of 47 U.S.C. § 332(c)(7).

12.      Defendant Board of Bonner County Commissioners is the governing body of Bonner County, Idaho. It is authorized to manage the business and financial concerns of the County. It also has the authority to tax and contract. The Board also enacts laws and ensures compliance with laws, including making final decisions on land use and zoning applications, such as the CUP required by the County to construct communication towers in certain zoning districts, as prescribed by law and regulation.

13.      Defendant County Commissioner Brian Domke, Defendant County Commissioner Asia Williams, and Defendant County Commissioner Ron Korn each serve as a Commissioner on the Board that ultimately denied the CUP application that is at issue in this

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 4

litigation. Each of the Commissioners is named as a defendant in their official capacity as a Commissioner.

## Jurisdiction and Venue

14.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because of federal questions arising under the Communications Act of 1934, as amended by the Communications Act. The Court has authority to issue declaratory judgment relief pursuant to 28 U.S.C. § 2201(a).

15.    Plaintiffs PI Tower and Verizon each is an entity adversely affected by Defendants' actions that are inconsistent with and preempted by the Communications Act (*see* 47 U.S.C. § 332(c)(7)(B)), and, therefore, Plaintiffs have standing to bring the claims in this Complaint pursuant to the Act (*see* 47 U.S.C. § 332(c)(7)(B)(v)).

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the actions, events, or omissions giving rise to this action occurred in Bonner County, Idaho, in the District of Idaho.

17.    This action is timely filed because the Complaint was filed within thirty days after the date of the Board's denial of PI Tower's Request for Reconsideration, which was Defendants' final action related to PI Tower's CUP application and represented Plaintiffs' exhaustion of administrative remedies.

## Statement of Facts

18.    The federal Communications Act governs federal, state, and local government regulation of the siting of personal wireless service facilities, such as the communication tower at issue in this case. 47 U.S.C. § 332(c)(7)(B).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 5

19.     The Communications Act provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with 47 U.S.C. § 332(c)(7) of the Communications Act may seek review in federal court, and that the court shall hear and decide the action on an expedited basis. 47 U.S.C. § 332(c)(7)(B)(v).

20.     As stated above, PI Tower constructs, owns, operates, and manages tower assets and wireless infrastructure used by national and regional wireless carriers to provide personal wireless services to end-user consumers in Idaho and throughout the United States of America. PI Tower leases space on its facilities to national and regional wireless carriers, including Verizon, AT&T, and T-Mobile, and regional carriers. Each carrier provides personal wireless services and other telecommunications services, as those terms are defined under federal law, to end-user wireless customers. In providing this valuable service to wireless carriers, PI Tower facilitates the development and deployment of advanced wireless services, consistent with the goals of the Communications Act.

21.     To provide reliable personal wireless services to end-user wireless customers, coverage and capacity from cell sites must overlap in a grid pattern resembling a honeycomb. If a cell site cannot be constructed within a particular geographical area, then the wireless carriers served by that cell site will not be able to provide wireless services to consumers within that area.

22.     To determine where a new or replacement wireless facility is required, carriers' radio frequency ("RF") engineers and experts use various techniques, such as sophisticated computer modeling programs and field testing, to complete a field propagation study, which shows where cell sites need to be located to provide reliable wireless service to users in the area. The propagation study also considers topography, the coverage boundaries of neighboring communication towers, and other factors. For a wireless network to perform adequately, cell

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 6

sites must be located, constructed, and operated so that the wireless carrier can achieve reliable personal wireless service for its customers. If there is no functioning communication tower in a given area, then there will be no reliable service for wireless customers within that area, and customers who live, work, or travel in the area will experience an unacceptable level of dropped calls and connection failures, including the potential inability to make E-911 emergency calls.

### The Proposed Facility

23.     Based on research and analysis by RF engineers, Verizon identified a significant gap in its ability to provide personal wireless services in Bonner County, Idaho, in the area along State Highway 95 near Elmira, Idaho. The significant gap in Verizon personal wireless services is approximately 4 to 7 miles in size along State Highway 95 and into the large rural, residential parcels along either side of State Highway 95.

24.     Verizon's gap in service coverage is significant due primarily to its size, but the existence of residents in the area and the volume of vehicular traffic along State Highway 95 (approximately 7,600 Annual Average Daily Traffic trips, according to the Idaho Transportation Department) both also contribute to the significance of Verizon's coverage gap.

25.     The existing communication tower that is nearest the Proposed Facility is 3.6 miles away from the Subject Property, which is too far away to provide service that would enable Verizon to fill its significant gap in personal wireless coverage and, therefore, is not technologically feasible to close the significant gap in service coverage.  Verizon, its RF engineers, and independent RF engineering expert Steven Kennedy of Biwabkos Consultants, LLC ("RF expert Kennedy") determined that the existing communication tower located 3.6 miles from the Subject Property would not provide the service levels necessary to enable Verizon to fill its significant coverage gap.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 7

26.    PI Tower hired consultants Tilson and ITG Communications to investigate properties in the area that were potentially appropriate for a communication tower to remedy Verizon's significant gap in coverage. To be an appropriate candidate site, a location would need to (a) enable Verizon to fill the significant gap in its personal wireless service, (b) comply with local zoning ordinances, (c) have a landlord willing to lease an area at commercially reasonable terms, and (d) be buildable.

27.    After investigating and evaluating properties, Tilson and ITG Communications concluded that the Subject Property: (a) was in a location that would enable Verizon to remedy its significant gap in coverage; (b) was in an area in which communication towers are allowed, pursuant to the County's zoning code, subject to obtaining a CUP; (c) had a property owner willing to lease a portion of the land for construction of a communication tower; and (d) was suitable for constructing, operating, and maintaining a communication tower.

28.    The Subject Property—the property upon which the Proposed Facility would be located—is a parcel within Bonner County that is zoned "Agriculture/Forestry-10 (A/F-10)." The Subject Property is owned by James A. and Sandy J. Dolyniuk, as trustees of the Dolyniuk Family Trust (collectively, the "Dolyniuks"). The Dolyniuks have consented to PI Tower entering the Subject Property to perform work related to the Proposed Facility and file documents related to that work and has entered into a lease agreement with PI Tower for installation of the Proposed Facility on the Subject Property.

29.    The parcels surrounding the Subject Property are predominantly undeveloped, some with limited residential uses.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 8

30.     The portion of the Subject Property on which the Proposed Facility would be located includes existing utility infrastructure, including at least two runs of electrical power lines that cross the Subject Property.

## The Application Process

31.     Under the Bonner County Code, a "communication tower" is defined as:

A structure specifically designed, constructed and/or erected for the purpose of attaching, mounting or otherwise affixing antennas at a height or elevation which is located above the base of the structure. Antenna support may include guyed wire support towers, lattice towers or monopole towers. A "lattice tower" consists of a vertical support structure consisting of a network of crossed metal braces, forming a tower that may be three (3) or more sided. A "monopole tower" consists of a vertical support structure consisting of a single vertical metal, concrete or wooden pole, typically round or square, and driven into the ground or attached to a foundation. "Communication towers" do not include dish antennas used for residential purposes; amateur and public safety communication radio towers, CB radio and radio transmitters with a tower height less than seventy five feet (75'); and VHF and UHF receive only residential television antennas.

Bonner County Code § 12-803.

32.     Pursuant to Bonner County Code § 12-335, Table 3-5 (entitled "Public Use Table"), communication towers are considered a "public use" by the County, and a CUP is required for a communication tower in areas of Bonner County zoned "Agriculture/Forestry-10 (A/F-10)."

33.     Section 12-222 of the Bonner County Code specifies what information and items are required to be included with a CUP application:

An application for a conditional use permit must be submitted to the Planning Department. At a minimum, the application shall contain the following information:

A.      Name, address and phone number of applicant.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 9

B.   Authorized signature of at least one owner of the property for which the conditional use permit is proposed.

C.   Legal description of property.

D.   Applicant's interest in title.

E.   Description of existing use.

F.   Zoning district in which property is located.

G.   Description of proposed conditional use requested.

H.   A narrative statement that addresses:

1.   The effects of elements such as noise, glare, odors, fumes and vibrations on adjoining property.

2.   The compatibility of the proposal with the adjoining land uses.

3.   The relationship of the proposed use to the comprehensive plan.

I.   A plan of the site, drawn to scale, showing location of all existing and proposed buildings, parking and loading areas, traffic access and circulation, undisturbed areas, open spaces, landscaping, refuse and service areas, utilities, signs and yards.

J.   Reserved. (Ord. 583, 12-5-2018)

K.   A "vicinity map", as defined in section 12-822 of this title, sufficient to show the impact of the proposal commensurate with the scale of the project.

L.   Other information that the Planning Director or Governing Body requires to determine if the proposed conditional use meets the intent and requirements of this title, such as information regarding utilities, traffic, service connections, natural resources, unique features of the land or off site features affecting the proposal.

Bonner County Code § 12-222.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 10

34.    Section 12-223 of the Bonner County Code sets forth the following criteria for a CUP:

The Zoning Commission or Hearing Examiner, except as otherwise provided in this title, is charged with conducting at least one public hearing on the conditional use permit application, at which time interested persons shall have an opportunity to be heard. The Zoning Commission or Hearing Examiner shall review the particular facts and circumstances of each proposal submitted. To grant a conditional use permit, the Zoning Commission or Hearing Examiner must find that the proposal is not in conflict with the policies of the comprehensive plan, as found in the adopted Implementation Component, and that the proposed use will neither create a hazard nor be dangerous to persons on or adjacent to the property.

Bonner County Code § 12-223.

35.    Section 12-488 of the Bonner County Code sets forth the following specific standards for a communication tower:

A.    Communication towers and attendant facilities shall be enclosed by a fence not less than six feet (6') in height.

B.    The base of any tower shall not be closer to any property line than a distance equal to the tower height.

C.    The Zoning Commission shall consider the public convenience and necessity of the communication tower and any adverse effect the facility would have upon properties in the vicinity and may require such reasonable restrictions and conditions of development as to uphold the purpose and intent of this title and the comprehensive plan.

D.    Communication towers shall be built to telecommunication industry association/electronic industry association (TIA/EIA) 222 revision F standards, or as amended, for steel antenna support structures.

E.    Communication towers shall be constructed to accommodate other future communication services where technically feasible ("collocation").

F.    Communication towers shall meet all operational, construction and lighting standards of the federal aviation administration [*sic*].

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 11

G.     Communication towers shall not penetrate any airspace surface on or adjacent to any public or private airfields as set forth at subchapter 5.2 of this title.

H.     Upon termination of use of a communication tower for a period of not less than one year, the landowner and/or tower operator/applicant shall remove the tower along with all supporting equipment, apparatus and foundation.

I.     Flammable material storage shall be in accordance with international fire code standards.

J.     Communication towers shall not be used for signage, symbols, flags, banners or other devices or objects attached to or painted or inscribed upon any communication facility for the purposes of displaying a message of any kind, except as required by a governmental agency.

Bonner County Code § 12-488.

36.     On December 6, 2023, Harmoni Towers, on behalf of PI Tower, submitted its complete application to the County for a CUP to construct and operate the Proposed Facility on the Subject Property. (Hereinafter, the CUP application submitted by Harmoni Towers on PI Tower's behalf will be referred to as "PI Tower's CUP Application," or simply the "CUP Application.")

37.     In support of its CUP Application, PI Tower submitted all materials required by Bonner County Code for a complete CUP application, including, among other things, the completed County application form, site photos, maps of the Subject Property and surrounding parcels, and engineering drawings showing the dimensions and setbacks of the Proposed Facility. Also submitted were a site survey, an alternate site analysis, an RF design analysis, a wetlands delineation, and a supporting narrative describing (a) the Proposed Facility, (b) how the Proposed Facility meets or exceeds the findings required by Bonner County Code for approval of the CUP, (c) how the Proposed Facility complies with the Bonner County Comprehensive Plan,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 12

(d) the compatibility of the Proposed Facility with adjoining land uses, and (e) how the Proposed Facility will improve the health and safety of County residents and visitors by providing a reliable communications source.

38.     PI Tower's CUP application was deemed complete on December 7, 2023, and the County's required application fee was paid that same day.

39.     PI Tower's CUP application proposed the construction and operation of a 140-foot monopole tower and small equipment building, within a 50-foot by 50-foot fenced, gated, and locked compound.

40.     The CUP application demonstrated that the Proposed Facility would be able to accommodate the wireless facilities and antennae of four wireless carriers.

41.     The Proposed Facility is necessary to remedy the significant gap in coverage currently suffered by Verizon in the area near the Subject Property, but the Proposed Facility also will be able to accommodate the wireless facilities and antennae of at least three additional wireless carriers, for a total of four carriers' wireless facilities. Because the Proposed Facility can support the wireless facilities and antennae of up to four carriers, construction of the Proposed Facility would eliminate the need for additional structures to address the needs of other wireless carriers.

42.     Verizon has already committed to be the first tenant of the Proposed Facility, and to lease space on the Proposed Facility for its wireless facilities and antennae.

43.     Upon receiving a complete CUP application, the County's CUP review process requires staff to forward the completed CUP application to County agencies and other agencies that serve residents of Bonner County. These agencies, after reviewing a CUP application, provide comments to the County on the application.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 13

44.     Staff in the County's Planning Department (the "Department") also reviews the CUP application, schedules a public hearing on it in front of the County's Hearing Examiner, and produces a staff report.

45.     On February 7, 2024, the Department held a public hearing before its Hearing Examiner to review PI Tower's CUP Application. The February 7, 2024 staff report produced for the Hearing Examiner's hearing provided a project summary, identified applicable laws, provided background information on the Subject Property, summarized comments received from agencies, summarized public comments, and analyzed the Proposed Facility against the Bonner County Code.

46.     During the Hearing Examiner's February 7, 2024 public hearing, PI Tower presented evidence and testimony, in addition to the Application and its supporting materials, demonstrating that the Proposed Facility complied with all applicable provisions of Bonner County Code and met all of Bonner County Code's approval standards required for a CUP for a communication tower. Additionally, and importantly, evidence presented to the Hearing Examiner during the February 7, 2024 public hearing (a) showed Verizon's existing significant gap in wireless service coverage along State Highway 95, (b) demonstrated the extent of Verizon's existing significant gap, and (c) concluded that the Proposed Facility was the only option for Verizon to remedy its current significant gap in wireless service coverage along State Highway 95.

47.     After considering PI Tower's CUP application and reviewing it against applicable provisions of Bonner County Code, including the code's standards for approval of a CUP for a communication tower, the County's Hearing Examiner approved PI Tower's CUP application, and produced a written decision dated February 13, 2024.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 14

48.     On March 12, 2024, an appeal of the Hearing Examiner's approval of PI Tower's CUP application was submitted to the County.

49.     In preparation for the Board's hearing of the appeal, County staff created a staff report that included a project summary, identified applicable laws, provided background information on the Subject Property, summarized comments received from agencies, summarized public comments, analyzed the Proposed Facility against the Bonner County Code, noted the Proposed Facility's compliance with Bonner County's Comprehensive Plan, and included the following pieces of analysis:

> **Staff:** The requested use is unlikely to result in fire hazards, radioactivity or electrical disturbance, noise, vibration, air pollution or water pollution.

April 18, 2024 Staff Report, p. 7.

> **Staff:** Communication towers are conditionally permitted in all zoning districts in Bonner County. The proposed wireless facility will improve public health and safety for customers living, working and traveling through the coverage area by improving reliable access to emergency services and 911.

April 18, 2024 Staff Report, p. 10.

> **Analysis:** Any potential impacts to other properties have been accounted for. The facility is unlikely to result in any significant noise, light, glare, smoke, odor, dust, particulate matter or vibrations as the facility will be designed in accordance with applicable state and federal standards.

April 18, 2024 Staff Report, p. 12.

> **Analysis:** Bonner County Revised Code was adopted in accordance with the Comprehensive Plan Land use objectives. The code permits Public Utility Facility as a Conditional Use in areas zoned Commercial. This request upholds the land use objectives of the Comprehensive Plan.

April 18, 2024 Staff Report, p. 14.

> **Analysis:** The application supports this objective by providing communication services for a rural residential area.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 15

April 18, 2024 Staff Report, p. 15.

> Staff concluded this project **is** consistent with the Bonner County Revised Code. This conclusion is demonstrated by the Standards Review, Conclusions of Law, Findings of Facts and Conditions of Approval. Conditions of Approval have been added to facilitate the project's conformance to Bonner County Revised Code.

April 18, 2024 Staff Report, p. 18.

50.     On April 18, 2024, the Board held its initial public hearing on the appeal, after which the Board continued its public hearing to July 15, 2024, and then to August 2, 2024.

51.     During the Board's appeal hearings on April 18, July 15, and August 2, 2024, Department staff again presented PI Tower's CUP Application, after which PI Tower again presented evidence and testimony, in addition to the CUP Application and its supporting materials, demonstrating that the Proposed Facility complied with all applicable provisions of Bonner County Code and met all of Bonner County Code's approval standards required for a CUP for a communication tower. Significant RF evidence and testimony was presented (a) showing Verizon's existing significant gap in wireless service coverage along State Highway 95, (b) demonstrating the extent of Verizon's existing significant gap, and (c) concluding that the Proposed Facility was the only option for Verizon to remedy its current significant gap in wireless service coverage along State Highway 95.

52.     On August 2, 2024, after closing the public hearing on the appeal, the Board deliberated and voted 2-1 to uphold the Hearing Examiner's original approval of PI Tower's CUP Application. Commissioner Williams was the lone vote against approval of PI Tower's CUP Application.

53.     On August 6, 2024, the Board issued its written decision approving PI Tower's CUP Application. The Board's August 6, 2024, written approval included the following findings and conclusions:

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 16

**Conclusion 1:** The proposed conditional use permit **is** in accord with the general and specific objectives of Bonner County Comprehensive Plan.

**Conclusion 2:** This proposal was reviewed for compliance with the criteria and standards set forth at BCRC Title 12, Chapter 2, Subchapter 2.2 Conditional Use Permits; Chapter 4 Development Standards and Chapter 7 Environmental Standards. The proposal **is** in accord with the Bonner County Revised Code.

**Conclusion 3:** The proposed use **will not** create a hazard or **will not** be dangerous to persons on or adjacent to the property.

Board's August 6, 2024, Decision Letter, p. 1.

14. The applicants submitted a drive test report, provided by Biwabkos Consultants LLC. The BOCC concluded that the drive test report demonstrated public convenience and necessity of the proposed communication tower.

Board's August 6, 2024, Decision Letter, p. 2.

15. The proposal is in line with and meets all standards for Communication Towers as found in BCRC 12-488.

Board's August 6, 2024, Decision Letter, p. 2.

54. On August 20, 2024, a request for reconsideration of the Board's approval was submitted to the County.

55. On September 12, 2024, the Board denied the request for reconsideration.

56. On October 10, 2024, a group of Bonner County residents filed a Petition for Judicial Review in Idaho's First District Court challenging the Board's approval of the CUP Application, pursuant to Idaho's Local Land Use Planning Act (or "LLUPA").

57. On January 8, 2025, the state district court granted PI Tower's Verified Petition to Intervene in the LLUPA action.

58. On May 6, 2025, based on recent Idaho case law governing the required content of written decisions under LLUPA, PI Tower filed a Notice of No Objection to the appellants' Petition for Judicial Review, thereby consenting to the court's entry of a judgment and order

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 17

vacating the County's decision and remanding the CUP Application back to the County for further action to correct the deficiencies in the Board's written decision.

59.    On June 27, 2025, the state district court entered its Judgment Vacating Respondent's Decision and its Order Granting Petitioners' Unopposed Petition for Judicial Review.

60.    In the time between the Board's 2-1 vote on August 6, 2024, to approve PI Tower's CUP Application and the state district court's June 27, 2025, remand of the CUP Application back to the County, the two commissioners that voted in favor of approving the CUP Application left the Board and were replaced by Commissioner Domke and Commissioner Korn.

61.    On January 15, 2026, the Board held a public hearing, on remand from state district court, on the appeal of the Board's prior 2-1 approval of PI Tower's CUP Application. During the hearing, PI Tower's representatives presented evidence and testimony demonstrating again that the Proposed Facility complied with all applicable provisions of Bonner County Code and met all of Bonner County Code's approval standards required for a CUP for a communication tower. Significant RF evidence and testimony was presented (a) showing Verizon's existing significant gap in wireless service coverage along State Highway 95, (b) demonstrating the extent of Verizon's existing significant gap, and (c) concluding that the Proposed Facility was the only option for Verizon to remedy its current significant gap in wireless service coverage along State Highway 95. Using sophisticated RF propagation modeling software that takes numerous elements (including signal strength, terrain, obstructions, and atmospheric conditions) into account, and also using on-site drive testing results, PI Tower's RF expert Kennedy conclusively determined that Verizon has an existing significant gap in its personal wireless service coverage in the area of the Subject Property, and that placing the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 18

Proposed Facility on the Subject Property would be the only means of remedying that significant coverage gap.

62.    On January 15, 2026, the Board tabled the appeal and scheduled a continued public hearing on the appeal to occur on February 11, 2026.

63.    On February 11, 2026, the Board heard rebuttal from both PI Tower's representatives and the appellants. Following the close of the public hearing, the Board then again tabled the appeal and scheduled February 26, 2026 as the date for deliberations and a decision on the appeal.

64.    On February 26, 2026, the Board deliberated and voted 3-0 to overturn and reverse the Hearing Examiner's approval of PI Tower's CUP Application, thereby denying PI Tower's CUP Application. The Board's written decision memorializing its denial of the CUP Application (the "Denial") was dated March 5, 2026. It included the following findings and conclusions:

> **Conclusion 1:** The proposed conditional use permit **is not** in accord with the general and specific objectives of Bonner County Comprehensive Plan.
>
> **Conclusion 2:** This proposal was reviewed for compliance with the criteria and standards set forth at BCRC Title 12, Chapter 2, Subchapter 2.2 Conditional Use Permits; Chapter 4 Development Standards and Chapter 7 Environmental Standards. The proposal **is not** in accord with the Bonner County Revised Code.
>
> **Conclusion 3:** The proposed use **may** create a hazard or **may** be dangerous to persons on or adjacent to the property.

Board's March 5, 2026, Decision Letter, p. 1.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 19

> *The Board found that the proposed CUP is in conflict with the comprehensive plan, since the Plan seeks to preserve the rural character of our County and placing a 140' tall cell tower in view of neighboring properties will neither preserve or enhance the rural character of those Rural Residential and Agriculture/Forestry designated parcels that are near the subject parcel. Also, the proposed cell tower is not visually similar to the power lines that exist on the subject parcel or in the surrounding area. Instead, the proposed CUP will negatively impact the rural character of those parcels by introducing new and unique commercial infrastructure that is inconsistent and out of character with the existing rural context.*

Board's March 5, 2026, Decision Letter, p. 2.

> *C; The Board rejected the staff analysis, particularly the effect of lighting for the project. The Board found that the FAA required lighting would be a permanent fixture, and the glare from the light cannot be mitigated.*

Board's March 5, 2026, Decision Letter, p. 3.[1]

> *C; The Board found that the proposed tower would conflict with the desire for dark skies within the rural areas of the county, the environmental quality, and overall rural character of the county. The Board agreed to reject the analysis of the staff report.*

Board's March 5, 2026, Decision Letter, p. 3.

> *C; The Board found the addition of the communication tower would change the rural features and design of the surrounding neighborhood, and rejected the analysis of the staff report.*

Board's March 5, 2026, Decision Letter, p. 3.

> **The Board has found that this application does not comply with this code section. The Board found conflicting evidence provided by the applicant and the appellant in the record regarding fire safety issues and radioactivity produced by the proposal.**

Board's March 5, 2026, Decision Letter, p. 5.

> **The Board found that the applicant likened this use to a power pole. However, the Board found that the requirement for the anti-collision light required by the FAA would be a nuisance, as it could not be shielded and downward facing, as required by this section.**

---

[1] There is nothing in the administrative record indicating that the proposed communications tower is required by the F.A.A. to be lit. In fact, the information provided by PI Tower to the County expressly stated the opposite: The proposed communications tower is not required by the F.A.A. to be lit.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 20

Board's March 5, 2026, Decision Letter, p. 5.[2]

65. On March 19, 2026, PI Tower timely submitted a request for reconsideration to the County and paid the reconsideration fee.

66. On March 31, 2026, Bonner County Planning Department Director Kendra Smith emailed counsel for PI Tower to say that the Board, having met to consider PI Tower's request for reconsideration, denied the reconsideration request. The Board's denial of PI Tower's request for reconsideration marked PI Tower's exhaustion of administrative remedies.

67. The Denial prohibits the provision of personal wireless services by Verizon to individuals who live, work, commute, and otherwise travel through Verizon's significant gap in service coverage in the area of the Subject Property.

68. Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), "[a]ny person adversely affected by any final action or failure to act by a state or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such case on an expedited basis."

69. This action is timely filed because it was filed within 30 days after the Board's denial of PI Tower's request for reconsideration, which denial constituted the Defendants' final action related to PI Tower's CUP Application.

---

[2] Again, there is nothing in the administrative record indicating that the proposed communications tower is required by the F.A.A. to include a "collision light." In fact, the information provided by PI Tower to the County expressly stated the opposite: The proposed communications tower is not required by the F.A.A. to be lit.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 21

## COUNT I
### (Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) –
### Effective Prohibition of Personal Wireless Services)

70.     Plaintiffs incorporate by reference and reallege the forgoing factual allegations in Paragraphs 1 through 69 as if fully set forth herein.

71.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any . . . local government . . . shall not have the effect of prohibiting the provision of personal wireless services."

72.     In *In the Matter of Acceleration of Broadband Deployment by Removing Barriers to Infrastructure Investment*, Declaratory Ruling and Third Report and Order, 33 FCC Rcd. 9088, 2018 WL 4678555 (2018) (Sept. 27, 2018) (the "*FCC 2018 Order*"), the FCC issued a declaratory ruling that definitively interpreted the "effective prohibition" language of Section 332(c)(7)(B)(i)(II). The FCC declared that the standards adopted by various Circuit Courts, including the Ninth Circuit, and other courts applying Section 332(c)(7)(B)(i)(II), were incorrect. *Id*. n.94. Instead, the FCC declared that "an effective prohibition [of service] occurs where a state or local legal requirement materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service." *Id*. ¶ 37. The FCC made clear that a locality effectively prohibits the provision of wireless services if it inhibits or limits a wireless service provider "not only when filling a coverage gap but also when densifying a wireless network, introducing new services or otherwise improving service capabilities." *Id*. The FCC also made clear that an effective prohibition includes inhibiting a provider from deploying the "performance characteristics" of its choosing. *Id*. n. 86. The FCC 2018 Order also declares that local governments cannot deny an application for a wireless site based on the alleged existence of alternative locations.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 22

73.     The FCC 2018 Order was affirmed on appeal by the Ninth Circuit in *City of Portland v. U.S.*, 969 F.3d 1020 (9th Cir. 2020), cert. denied, 141 S.Ct. 2855 (2021).

74.     The FCC 2018 Order is currently in effect and governs PI Tower's claim under 47 U.S.C. § 332(c)(7)(B)(i)(II).

75.     Applying the standards articulated in the FCC 2018 Order, the County's Denial of PI Tower's CUP Application has the effect of prohibiting the provision of personal wireless service.

76.     There is an area in which Verizon needs to install a wireless facility to provide personal wireless service at the level it has determined appropriate. Accordingly, the Defendants' denial of PI Tower's CUP Application effectively prohibits the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

77.     In addition, or in the alternative, even if the Court were to apply the standard for claims under Section 332(c)(7)(B)(i)(II) previously adopted by the Ninth Circuit, the Defendants' Denial of PI Tower's CUP Application still effectively prohibits the provision of personal wireless services, in violation of Section 332(c)(7)(B)(i)(II). *See*, e.g., *MetroPCS, Inc. v. City & Cty. of San Francisco*, 400 F.3d 715 (9th Cir. 2005); *T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 995 (9th Cir. 2009).

78.     RF expert and engineering evidence demonstrates that Verizon has a significant gap in reliable personal wireless service in the area of the Subject Property.

79.     Tilson and ITG Communications, on behalf of PI Tower, made a good faith and thorough investigation of potential alternative sites in and around the area within which a communication tower must be located to remedy Verizon's significant gap in coverage and function effectively within Verizon's network of existing wireless communication facilities.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 23

Within the relevant area, there are no existing structures of sufficient height or of a type or design on which a communication tower could be installed to remedy Verizon's existing significant gap in personal wireless service. And no less intrusive sites are feasible or practically available.

80. Further, the Proposed Facility would be on a parcel that already includes significant utility facilities, including at least two runs of tall electrical power lines that cross the Subject Property.

81. The Defendants' Denial of PI Tower's CUP Application for a communication tower--a type of personal wireless service facility, as that term is defined in the Communications Act—effectively prohibits the provision of personal wireless services in violation of, and is preempted by, Section 332(c)(7)(B)(i)(II) of the Communications Act and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order commanding the Defendants to promptly approve PI Tower's CUP application and all related permits for the Proposed Facility.

**COUNT II**
**(Violation of 47 U.S.C. § 332(c)(7)(B)(iii) –**
**Lack of Substantial Evidence)**

82. Plaintiffs incorporate by reference and reallege the foregoing factual allegations in Paragraphs 1 through 81 as if fully set forth herein.

83. Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a . . . local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be . . . supported by substantial evidence contained in a written record."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 24

84.     "The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154, 203 L.Ed. 2d 504 (citing *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015)). "Substantial evidence" is "more than a mere scintilla." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206 (1938) (emphasis deleted)). "It means---and means only--- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206.) Generalized opposition to wireless facilities is not substantial evidence for purposes of Section 332(c)(7)(B)(iii). *See*, *e.g.*, *Verizon Wireless (VAW) LLC v. Douglas Cty., Kan. Bd. of Cty. Comm'rs*, 544 F. Supp. 2d 1218, 1249 (D. Kan. 2008); id. at n.45 (collecting cases). A denial based on a factor that is not a factor for consideration under the local law is not supported by substantial evidence. *T-Mobile Cent., LLC v. Wyandotte Cty.*, 546 F.3d 1299, 1308 (10th Cir. 2008) (denial based on lack of a significant gap was not supported by substantial evidence because the local code did not require such a showing).

85.     Comprehensive and largely uncontroverted evidence was presented to both the Department's Hearing Examiner and the Board that the Subject Property and the Proposed Facility comply with the Bonner County Code's required findings for approval of a CUP application for a communication tower.

86.     PI Tower's CUP Application for construction and operation of the Proposed Facility on the Subject Property was complete and satisfied all of the criteria and standards set forth in Bonner County Code.

87.     PI Tower hired an independent RF expert, RF expert Kennedy, who presented several types and articles of evidence demonstrating the existence of Verizon's significant gap in

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 25

personal wireless service coverage in the area of the Subject Property. Opponents of PI Tower's CUP application retained no expert, instead opting to have one of the appellants—a layperson—present evidence that the appellants hoped would contradict the expert RF evidence submitted by PI Tower. Additionally, opponents raised unsupported concerns related to alleged health risks of RF emissions and the alleged impact of a communications tower on property values. Using evidence, PI Tower's representatives rebutted these concerns.

88.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(iv), the County cannot regulate the siting of personal wireless service facilities, like the communications tower proposed in PI Tower's CUP Application, based on concerns regarding RF emissions so long as the RF emissions will comply with FCC regulations governing safe levels of RF emissions. 47 U.S.C. § 332(c)(7)(B)(iv). No evidence in the record demonstrates that the RF emissions from the Proposed Facility would violate FCC regulations regarding such emissions.

89.     In addition, no objective direct evidence in the administrative record demonstrates that the Proposed Facility would cause a decrease in property values, and PI Tower presented uncontroverted evidence and testimony rebutting opponents' unsupported assertions related to property values.

90.     At least one Commissioner has expressed generalized opposition to *any* wireless communications facility.

91.     The reasons given by the Board for its denial of PI Tower's CUP Application lack the support of substantial evidence in the administrative record.

92.     The Board's Denial of PI Tower's CUP application ignores the evidence presented in support of the CUP Application.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 26

93.     The Board's conclusions and findings in its Denial are not supported by substantial evidence in the written record.

94.     Consequently, the Defendants' Denial is not supported by substantial evidence in the written administrative record and it violates, and is preempted by, Section 332(c)(7)(B)(iii) of the Communications Act and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order commanding the Defendants to approve PI Tower's CUP application.

### COUNT III
### (Violation of 47 U.S.C. § 332(c)(7)(B)(iv) –
### Unlawful Regulation Based on Radiofrequency Emissions)

95.     Plaintiffs incorporate by reference and reallege the foregoing factual allegations in Paragraphs 1 through 94 as if fully set forth herein.

96.     The Proposed Facility, as designed, will comply with all applicable regulations of the FCC governing human exposure to radiofrequency ("RF") emissions.

97.     In its Denial, the Board relied, in whole or in part, on concerns regarding the environmental or health effects of RF emissions from wireless facilities, including but not limited to: (a) statements by commissioners during public hearings referencing alleged health risks from RF emissions; (b) public testimony focused on perceived dangers of RF exposure; and/or (c) findings and conclusions citing RF emissions and "radioactivity" as a basis for denying PI Tower's CUP Application.

98.     The administrative record reflects that RF emissions and/or alleged health effects were a factor in the County's Denial, even though the Proposed Facility complies with all applicable FCC standards.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 27

99.     Section 332(c)(7)(B)(iv) of the TCA provides that: "No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions."

100.    Because the Proposed Facility complies with FCC's RF emission standards, the County is preempted from denying PI Tower's CUP Application based on RF emissions or their alleged environmental or health effects.

101.    The County's Decision violates 47 U.S.C. § 332(c)(7)(B)(iv) because it regulates the placement, construction, and/or modification of a personal wireless service facility on the basis of RF emissions and their alleged effects, notwithstanding undisputed FCC compliance.

102.    The County's unlawful reliance on RF emissions infected the Decision and renders it invalid as a matter of federal law.

103.    Plaintiffs have been injured by the County's violation of the Communications Act, including delay in deploying needed wireless infrastructure, lost revenue, increased costs, and interference with the provision of personal wireless services.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

**1.**     An expedited review of the matters set forth in this Complaint, pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

**2.**     A judgment that Defendants' actions and decisions have the effect of prohibiting the provision of personal wireless service, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II);

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 28

3.      A judgment that Defendants' actions and decisions are not supported by substantial evidence in the written administrative record, in violation of 47 U.S.C. § 332(c)(7)(B)(iii);

4.      A judgment that Defendants' actions and decisions violate and are preempted by the Communications Act and, therefore, are void and invalid;

5.      An order requiring Defendants to grant PI Tower's CUP Application and thereby approve the Proposed Facility;

6.      An order directing Defendants to issue all subsequent and ancillary approvals and permits necessary for the construction and operation of the Proposed Facility on the Subject Property;

7.      An award of Plaintiffs' costs, including reasonable attorneys' fees; and

8.      Such other and further relief as the Court may deem just and proper.


[ . . . ]

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 29

DATED: April 30, 2026.

Respectfully submitted,

Plaintiffs PI Tower Development LLC, and Cellco Partnership, d/b/a Verizon Wireless,

By their attorney,

_/s/ Joshua J. Leonard_

CLARK WARDLE LLP
Joshua J. Leonard, ISB No. 7238
251 E. Front Street, Suite 310
P.O. Box 639
Boise, Idaho 83701
Telephone: (208) 388-1000
jleonard@clarkwardle.com
filing@clarkwardle.com

Attorneys for Plaintiffs PI Tower Development LLC, and Cellco Partnership, d/b/a Verizon Wireless

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT - 30